John T. Wolak

Robert C. Brady

**GIBBONS P.C.**

One Gateway Center

Newark, NJ 07102

(973) 596-4811

jwolak@gibbonslaw.com

rbrady@gibbonslaw.com

*Attorneys for Plaintiff*

*Cold Spring Granite Company*

William Z. Pentelovitch (*pro hac vice* to be filed)

Jason A. Lien (*pro hac vice* to be filed)

Margaret S. Brownell (*pro hac vice* to be filed)

Mary Heath (*pro hac vice* to be filed)

**MASLON LLP**

3300 Wells Fargo Center

90 South Seventh Street

Minneapolis, MN 55402-4140

(612) 672-8200

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| COLD SPRING GRANITE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>RLI INSURANCE COMPANY,<br><br>Defendant. | **DOCUMENT FILED ELECTRONICALLY**<br><br>Civil Action No. 3:19-cv-8491<br><br>**COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

Plaintiff Cold Spring Granite Company d/b/a/ Coldspring ("Coldspring"), by and through its undersigned counsel, states the following as and for its Complaint against Defendant RLI Insurance Company ("RLI"):

### NATURE OF THE ACTION

1.     Coldspring brings this action against RLI for declaratory relief and breach of contract regarding RLI's duty to defend and indemnify Coldspring as an additional insured and indemnitee under the RLI Policies (as defined below).

1

2.      RLI has an obligation to defend and indemnify Coldspring with respect to the lawsuit filed by the Roman Catholic Diocese of Metuchen (the "Diocese") against Coldspring in the Superior Court of New Jersey, Law Division Somerset County, styled: *Diocese of Metuchen v. Cold Spring Granite Company, et al.*, Case No. L-423-15 (the "Underlying Lawsuit").

3.      The Underlying Lawsuit asserts claims of negligence, faulty workmanship and property damage against Coldspring arising from work done by West Rac Contracting Corp. ("West Rac"), and/or West Rac's subcontractors, in the construction of the Mary, Sorrowful Mother Mausoleum, a chapel mausoleum in the Holy Cross Cemetery in South Brunswick, New Jersey ("the Mausoleum").

4.      Coldspring is an additional insured and indemnitee under the RLI Policies issued to West Rac.

5.       Therefore, RLI has an obligation to insure Coldspring for claims of and liability for defective workmanship and damage arising from West Rac's work and/or that of West Rac's subcontractors in the construction of the Mausoleum.

6.      RLI has wrongfully denied coverage for Coldspring under the RLI Policies.

7.      Coldspring brings this action seeking a declaration that RLI has a duty to defend and indemnify Coldspring under one or more of its insurance policies for the Underlying Lawsuit, and seeking an award of all available damages for RLI's breach of its duties under the Policies, as well as under statutory and common law.

## THE PARTIES

8.      Plaintiff Coldspring is a corporation organized and existing under the laws of the State of Minnesota. Coldspring's principal place of business is at 17482 Granite West Road, Cold Spring, MN 56320.

9.     Upon information and belief, RLI is an insurance company authorized by the New Jersey Department of Banking and Insurance to do business in the State of New Jersey, with its principal place of business at 9025 North Lindbergh Drive, Peoria, IL 61615.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because plaintiff and the defendant are citizens of different states, and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interests and costs.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this judicial district, including the following: (1) this action seeks coverage from RLI for claims made against Coldspring in the Underlying Lawsuit, which was filed in New Jersey state court; (2) the subject of the Underlying Lawsuit is the construction of the Mausoleum, which is situated in New Jersey; (3) the RLI Policies include additional insured endorsements that require RLI to insure owners where required by written contract, and the written contract at issue required coverage of Coldspring as owner, for the construction of a mausoleum in New Jersey; and (4) one of the insurance policies at issue includes an additional insured completed-operations endorsement requiring RLI to also insure locations where required by written contract, and the written contract which is the subject of this action was for the construction of a mausoleum in New Jersey.

## THE MAUSOLEUM PROJECT

12.     In 2008, Coldspring entered into a "Mausoleum Construction Project Agreement" with the Diocese (the "Mausoleum Agreement") for the design and construction of the

Mausoleum ("Mausoleum Project"). Construction began in or around December 2008, and was completed on or about December 23, 2011.

13.     Coldspring hired West Rac as the general contractor for the Mausoleum Project pursuant to the terms and conditions of the AIA Owner and Contractor Agreement between Coldspring and West Rac entered into in July 2010 (the "West Rac Agreement") (attached hereto as Exhibit 1).  In the West Rac Agreement, Coldspring is referred to as the "Owner" and West Rac is referred to as the "Contractor." *Id.*

14.      The West Rac Agreement requires that "[t]he Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201-2007." (*Id.* at Article 10).

15.     The West Rac Agreement further requires West Rac to add Coldspring as an additional insured to its insurance for claims caused by West Rac's negligent acts or omissions both during the construction and once the construction is completed.  The Agreement states:

> The Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner as additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

(*Id.* at Article 11.1.4)

16.     The West Rac Agreement requires West Rac to indemnify Coldspring for "claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work . . . to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor . . . ." (*Id.* at Article 3.18).

## THE RLI POLICIES

### The Primary and Excess Policies

17.     RLI issued primary commercial general liability policies to West Rac for the periods May 31, 2010 to September 30, 2011("2010-2011 Policy") (attached hereto as Exhibit 2) and September 30, 2011 to January 30, 2013 ("2011-2013 Policy") (attached hereto as Exhibit 3) (together, "Primary Policies").

18.     Each Primary Policy has an Occurrence Limit of $1 million, a General Aggregate limit of $1 million, and a Products-Completed Operations Aggregate Limit of $2 million.

19.     RLI also issued two corresponding excess liability policies to West Rac, for the periods May 31, 2010 to September 30, 2011, and September 30, 2011 to January 30, 2013 (the September 30, 2011 to January 30, 2013 policy is attached hereto as Exhibit 4) (together, "Excess Policies," and together with the Primary Policies, the "RLI Policies").

20.     On information and belief, each Excess Policy has a Combined Single Limit Bodily Injury and/or Property Damage, General Aggregate Limit and Products-Completed Operations Aggregate Limit of $10M, respectively.

21.      On information and belief, the Excess Policies are "follow form," i.e. they follow the underlying insurance in all respects, including the endorsements, except where there are provisions to the contrary.

22.     On information and belief, the Excess Policies follow the Additional Insured Endorsements in the Primary Policies.

23.     The Primary Policies are issued on an "occurrence" basis and contain the following insurance agreement:

SECTION I—COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE
LIABILITY

1.      Insuring Agreement

      a.  We will pay those sums that the insured becomes
legally obligated to pay as damages because of "bodily
injury" or "property damage" to which this insurance
applies. We will have the right and duty to defend the
insured against any "suit" seeking those damages even
if the allegations are groundless, false or fraudulent.

                        ****

      b.  This insurance applies to "bodily injury" and "property
damage" only if:

          (1) the "bodily injury" or "property damage" is caused
by an "occurrence" that takes place in the "coverage
territory";

          (2) the "bodily injury" or "property damage" occurs
during the policy period . . . .

24.      The Primary Policies define "property damage" as:

      a.  Physical injury to tangible property, including all
resulting loss of use of that property. All such loss of
use shall be deemed to occur at the time of the physical
injury that caused it; or

      b.  Loss of use of tangible property that is not physically
injured. All such loss of use shall be deemed to occur at
the time of the "occurrence" that caused it.

25.      The Primary Policies define "occurrence" as "an accident, including continuous

or repeated exposure to substantially the same general harmful conditions."

26.      The Primary Policies define "products-completed operations hazard" to include:

      a.  [A]ll . . . "property damage" occurring away from
premises you  own or rent and arising out of . . . "your
work" except:

\*\*\*\*

    (2)    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        (a)    When all of the work called for in your contract has been completed.

\*\*\*\*

27.    The Primary Policies also require RLI to cover West Rac's indemnitees:

SUPPLEMENTARY PAYMENTS — COVERAGES A AND B

\*\*\*\*

    2.    If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

    a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    b.  The insurance applies to such liability assumed by the insured;

    c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

\*\*\*\*

28.    Under the so-called "Subcontractor Exception," the Primary Policies cover property damage to RLI's work and arising out of it where the defective work was performed by RLI's subcontractor:

    2.    Exclusions

    This insurance does not apply to:

\*\*\*\*

7

l.      Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

***This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.***

(emphasis added).

29.     "Your work" as used in the Primary Policies means "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations."

30.     The Term "you" and "your" as used throughout the Primary Policies refers only to the "Named Insured," which is West Rac Contracting Corp.

### The Additional Insured Endorsements

31.     The Primary Policies include Additional Insured Endorsements intended to cover a party like Coldspring, in its role as "owner," and/or one who is required to be named as an additional insured per the terms of a construction contract with West Rac.

32.     The 2010-2011 Primary Policy includes an endorsement that *automatically* covers a party that is required by the construction contract to be named as an additional insured.  The scope of coverage is for liability arising from West Rac's *ongoing operations*:

ADDITIONAL INSURED-OWNERS, LESSEES OR CONTRACTORS-AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. SECTION II – WHO IS AN INSURED is amended to include as an additional insured the person or organization for whom you are performing operations *when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.* Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. the acts or omissions of those acting on your behalf;

*in the performance of your ongoing operations* for the additional insured.

(emphasis added).

33.     The 2011-2013 Primary Policy contains an Additional Insured Endorsement that specifically covers "owners" when required by contract, for liability arising from West Rac's "completed operations":

**ADDITIONAL INSURED-OWNERS, LESSEES OR CONTRACTORS-COMPLETED OPERATIONS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

****

SECTION II – WHO IS AN INSURED is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with r*espect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work"* at the location designated and described in the schedule of this endorsement performed *for that additional insured and included in the "products-completed operations hazard.*"

34.     The Schedule lists as additional insureds "*[a]ll owners where required by written contract* signed prior to a loss," and lists all "*[l]ocations where required by written contract*." (emphasis added).

## THE UNDERLYING LAWSUIT AND CLAIM

35.     On March 3, 2015, the Diocese filed the Underlying Lawsuit against Coldspring. (attached hereto as Exhibit 5).

36.     The Complaint alleges that the Diocese retained Coldspring as the design-builder for the Mausoleum, "meaning that Cold Spring was and is responsible for the design, detailing, supervision, and construction of the mausoleum from start to finish." (*Id.* at ¶ 7).

37.     The Complaint alleges that shortly after the completion of construction on the Mausoleum in 2011, the Diocese discovered "a number of significant defects, including roof leaks, unsafe carpet and tile misalignment, broken granite floor tiles, and deficient and defect HVAC Systems throughout the mausoleum." (*Id.* at ¶ 22).

38.     The Complaint alleges that the faulty workmanship has caused among other things, roof leaks causing property damage, damage to the flashing and counterflashing around the through-wall scuppers, damage to the rooftop electrical services and PVC conduits, the breaking of tiles, tripping hazards, and breakdowns of the HVAC System, and risk of serious personal injury. (*Id.* ¶¶ 25, 38-46, 48-50, 52-68).

39.     The Complaint alleges that the faulty HVAC system and faulty workmanship of the Defendants has caused the Mausoleum to be either be completely unheated or not sufficiently heated during winter months, and uncomfortably hot during summer months. (*Id.* ¶¶ 52-57, 67).

40.     The Complaint alleges that the faulty workmanship was due in part to "Cold Spring's inadequate supervision" of West Rac's subcontractors and/or the construction of the Mausoleum. (*Id.* at ¶¶ 47, 51, 66, 68).

41.     The Complaint outlines the alleged damage and loss of use arising from the allegedly faulty workmanship, stating  "[t]hese serious construction defects have also already had financial consequences for the Diocese, having significantly impacted mausoleum sales. It is difficult or impossible to convince someone to purchase a mausoleum niche when the committal rooms are freezing in the winter, unbearably hot in the summer, and dangerous to walk around in." (*Id.* ¶ 72).

42.     The Complaint asserts nine causes of action against Coldspring: breach of contract, breach of implied duty of good faith and fair dealing, breach of express warranties, breach of implied warranty to construct the Mausoleum in a workmanlike manner and in conformance with industry standards, breach of implied warranty of reasonably competent design, breach of implied warranty of fitness for intended use, negligence, negligence and professional malpractice, and breach of duty to prepare complete and adequate specifications.

43.     The gravamen of the Complaint is that Coldspring was "careless and negligent in the design *and construction* of [the Mausoleum]," and failed to "perform the construction of [the Mausoleum] in a good and workmanlike manner . . . ." (*Id.* at ¶¶ 103, 119) (emphasis added).

44.     The Complaint seeks a judgment against Coldspring for compensatory and consequential damages, and attorneys' fees. (See *id.*).

45.     On June 5, 2015, Coldspring answered  the Complaint and brought a third-party complaint against West Rac and various subcontractors ("Third-Party Complaint") (attached

hereto as Exhibit 6). Coldspring filed an Amended Third-Party Complaint on November 6, 2015, naming additional subcontractors.

46.     The Third-Party Complaint alleges that West Rac carelessly and negligently performed its general contractor duties and is liable for all injuries and damages caused or proximately caused by its negligence in the performance of its duties, including "its construction activities, the hiring of subcontractors, supervision of the work being performed, review of all plans and specifications, ensuring that the work performed was in compliance with the plans, specifications and all applicable standards and codes, in addition any and all other negligent actions that may be discovered in the future."(*Id.* at ¶ 6).

47.     The Third-Party Complaint seeks contribution and common-law and contractual indemnification from West Rac and asserts a breach of West Rac's contractual obligation to defend and indemnify Coldspring. (*Id.* at ¶ 7).

48.     On February 2, 2016, the Diocese filed an Amended Complaint naming West Rac and various West Rac subcontractors ("Amended Complaint") (attached hereto as Exhibit 7).

49.     The Amended Complaint asserts against Coldspring and against all defendants essentially the same causes of action as the Complaint, but adds a new one: consumer fraud against all defendants. (See *id.*).

50.     The Amended Complaint also asserts additional factual allegations, including alleged deficiencies in the construction of the Mausoleum that includes problems with the Mausoleum's doors, insulation, ventilation, window and skylight glass, electrical systems and plumbing, sinking of the concrete slab, and floor breakage. (*Id.* ¶¶ 73-74, 77-114, 146-149, 151-153, 155, 158-161).

51.     On May 31, 2018, Coldspring filed an Amended Answer, Crossclaim and Third-Party Claim, adding claims against additional subcontractors.

52.     On January 8, 2019, the Diocese filed a Second Amended Complaint adding claims against Coldspring and naming additional subcontractors as defendants.

53.     During the discovery phase of the Underlying Lawsuit, the Diocese has alleged that the faulty workmanship in the construction of the Mausoleum has caused property damage in the form of phorid flies.

54.     The Diocese has alleged that the presence of phorid flies also impacts the sale of burial spaces in the Mausoleum.

## RLI DENIES COLDSPRING'S CLAIM FOR DEFENSE AND INDEMNITY

55.     RLI was first placed on notice of the Complaint and Third-Party Complaint on September 22,  2015.

56.     RLI responded on October 1, 2015,by sending a letter to Coldspring wrongfully denying coverage to "West Rac or any other insured" for the Underlying Lawsuit.  On March 23, 2016, RLI sent Coldspring a letter reiterating this denial of coverage in connection with the tendered Amended Complaint in the Underlying Lawsuit.

57.     By letter dated November 28, 2018, Coldspring demanded RLI reverse its denial and agree to defend and indemnify Coldspring for the Underlying Lawsuit and all liability caused by the defective workmanship of West Rac and its subcontractors, as required under the West Rac Agreement and the Policies.

58.     In response to Coldspring's demand, RLI issued a letter dated December 17, 2018, maintaining its denial of coverage.

## WEST RAC'S COVERAGE ACTION

59.     On June 15, 2017,West Rac brought a declaratory judgment action in the Superior Court of New Jersey, Law Division Somerset County, *West Rac Contracting Corp. v. Peerless Insurance Company, et al.,* Docket No. SOM-L-423-15 ("Coverage Action").

60.     In the Coverage Action, West Rac named 30 separate insurers of its subcontractors, seeking additional insured coverage for West Rac's liability arising from the Mausoleum Project and the Underlying Lawsuit.

61.     That case was consolidated with the Underlying Lawsuit on October 19, 2017.

62.     West Rac did not name its own insurer, RLI, in the Coverage Action and RLI is not a party to that Action or, upon information and belief, any other action seeking insurance coverage for the Underlying Lawsuit.

63.     Upon information and belief, RLI has not denied coverage to West Rac for the Underlying Lawsuit.

64.     Upon information and belief, RLI is providing a defense to West Rac for the Underlying Lawsuit.

## CAUSES OF ACTION

### COUNT I
#### (Declaratory Relief – Duty to Defend)

65.     Coldspring incorporates and realleges the foregoing paragraphs as though fully set forth herein.

66.     Coldspring is an additional insured and indemnitee under the RLI Policies, and therefore RLI has a duty to defend Coldspring for the Underlying Lawsuit, which asserts claims against Coldspring for damages arising from West Rac's negligent and faulty workmanship and/or that of its subcontractors.

67.     Coldspring timely tendered its claim for defense of the Underlying Lawsuit to RLI under the RLI Policies, and complied with all other terms and conditions of the RLI Policies.

68.     Despite Coldspring's timely tender of its claim for defense of the Underlying Lawsuit to RLI, and Coldspring's compliance with the terms and conditions of the RLI Policies, RLI refused to defend Coldspring with respect to the Underlying Lawsuit, and even restated its denial twice.

69.     An actual and justiciable controversy exists between Coldspring and RLI over RLI's duty to defend Coldspring in the Underlying Lawsuit under the RLI Polices.

70.     Coldspring seeks and is entitled to a declaration of the Court that RLI has a duty to defend Coldspring in the Underlying Lawsuit under the RLI Policies.

**COUNT II**
**(Declaratory Relief – Duty to Indemnify)**

71.     Coldspring incorporates and realleges the foregoing paragraphs as though fully set forth herein.

72.     Coldspring is an additional insured and indemnitee under the RLI Policies, and therefore RLI has a duty to indemnify Coldspring for sums it becomes legally obligated to pay as damages in the Underlying Lawsuit arising from West Rac's negligent and faulty workmanship and/or that of its subcontractors.

73.     Coldspring timely tendered its claim for indemnity of the Underlying Lawsuit to RLI under the RLI Policies, and complied with all other terms and conditions of the RLI Policies.

74.     Despite Coldspring's timely tender of its claim for indemnity of the Underlying Lawsuit to RLI and Coldspring's compliance with the terms and conditions of the RLI Policies,

RLI refused to indemnify Coldspring with respect to the Underlying Lawsuit, and even restated its denial twice.

75.     An actual and justiciable controversy exists between Coldspring and RLI over RLI's duty to indemnify Coldspring in the Underlying Lawsuit under the RLI Polices.

76.     Coldspring seeks a declaration that because there is coverage for the Underlying Lawsuit, RLI has a duty to indemnify Coldspring for the Underlying Lawsuit under the RLI Polices.

## COUNT III
### (Breach of Contract)

77.     Coldspring incorporates and realleges the foregoing paragraphs as though fully set forth herein.

78.     The RLI Policies are enforceable contracts.

79.     Coldspring is an additional insured and indemnitee under the RLI Policies, and therefore RLI has a duty to defend and indemnify Coldspring for the Underlying Lawsuit and for liability and damages arising from West Rac's negligent and faulty workmanship and/or that of its subcontractors.

80.     Coldspring timely tendered its claim for defense and indemnity of the Underlying Lawsuit to RLI under the RLI Policies, and complied with all other terms and conditions of the RLI Policies.

81.     Despite Coldspring's timely tender of it claim for defense and indemnity of the Underlying Lawsuit to RLI, and Coldspring's compliance with the terms and conditions of the RLI Policies, RLI refused to defend or indemnify Coldspring with respect to the Underlying Lawsuit, and even restated its denial twice.

82. RLI has breached its contractual duty to defend and indemnify Coldspring by denying Coldspring's claim for coverage.

83. RLI is liable to Coldspring for its breach of contract in an amount in excess of $75,000 to be determined at trial together with interest and costs.

## COUNT IV
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

84. Coldspring incorporates and realleges the foregoing paragraphs as though fully set forth herein.

85. The RLI Policies contain an implied covenant that RLI shall not commit any act which shall destroy or injure the rights of Coldspring to obtain the benefits of its additional insured coverage.

86. RLI owes a fiduciary duty to Coldspring under the RLI policies to act fairly and in good faith.

87. RLI breached its fiduciary duty and the covenant of good faith and fair dealing by preventing Coldspring from obtaining the benefits of the insurance policy to which it is entitled, and in so doing has put its own interests before that of its additional insured.

88. RLI breached its fiduciary duty and the covenant of good faith and fair dealing by failing to investigate Coldspring's insurance claim and the allegations brought against it in the Underlying Lawsuit arising from West Rac's allegedly negligent construction.

89. RLI breached its fiduciary duty and the covenant of good faith and fair dealing by denying coverage for Coldspring, even though such coverage falls squarely in the plain language of the RLI Policies, including in the Additional Insured Endorsements.

90. RLI breached its fiduciary duty and the covenant of good faith and fair dealing when it abandoned Coldspring, refusing to defend or indemnify it for the Underlying Lawsuit.

91.     RLI is liable to Coldspring for its breach of fiduciary duty and the covenant of good faith and fair dealing in an amount in excess of $75,000 to be determined at trial together with interest and costs.

**WHEREFORE**, Coldspring prays for entry of a judgment in its favor and against Defendant RLI, as follows:

      a.)    Declaratory judgment that RLI has a duty to defend Coldspring in the Underlying Lawsuit under the RLI Policies;

      b.)    Declaratory judgment that RLI has a duty to indemnify Coldspring for all damages resulting from the Underlying Lawsuit tendered by Coldspring up to the limits of the RLI Policies;

      c.)    Awarding Coldspring compensatory damages arising from RLI's breach of the RLI Policies;

      d.)    Awarding Coldspring consequential damages arising from RLI's breach of the RLI Policies;

      e.)    Awarding Coldspring damages arising from RLI's breach of the covenant of good faith and fair dealing;

      f.)    Awarding Coldspring reasonable attorneys' fees, interest and court costs; and

      g.)    Awarding Coldspring all other and further relief as this Court deems just and proper.

Dated:  March 13, 2019
Newark, New Jersey

**GIBBONS P.C.**

By:_____/s/ Robert C. Brady_____
John T. Wolak
Robert C. Brady
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

William Z. Pentelovitch
(*pro hac vice* to be filed)
Jason A. Lien
(*pro hac vice* to be filed)
Margo Brownell
(*pro hac vice* to be filed)
Mary Heath
(*pro hac vice* to be filed)
**MASLON LLP**
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-4140
Telephone:  (612) 672-8200
Facsimile:  (612) 672-8397

*Attorneys for Plaintiff*
*Cold Spring Granite Company*

## <u>JURY DEMAND</u>

Plaintiff Cold Spring Granite Company hereby demands a jury as to all issues so triable.

**GIBBONS P.C.**
*Attorney for Plaintiffs*
*Cold Spring Granite Company*

_____/s/ Robert C. Brady_____
Robert C. Brady

Dated:  March 13, 2019

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**GIBBONS P.C.**
*Attorney for Plaintiff*
*Cold Spring Granite Company*

_____/s/ Robert C. Brady_____
Robert C. Brady

Dated:  March 13, 2019

## <u>CERTIFICATION PURSUANT TO L. CIV. R. 201.1</u>

Mandatory arbitration pursuant to Local Civil Rule 201.1 is inappropriate in this case as the damages sought exceed $150,000.00.

**GIBBONS P.C.**
*Attorney for Plaintiff Cold Spring Granite*
*Company*


_____/s/ Robert C. Brady_____
Robert C. Brady


Dated:  March 13, 2019